514-0364, Progressive Northern Insurance v. Sinovic. Mr. Kirkpatrick, are you ready to proceed? Thank you, Your Honor. My name is Eric Kirkpatrick, and I represent Ms. Sinovic, who was the defendant in this matter, that was filed by Progressive Insurance. This case involves an issue of underinsured motorist coverage. The parties agreed that there need to be contact between the vehicles for the underinsured coverage to apply. Progressive was Ms. Sinovic's carrier. I don't have much to add other than what is in my brief, but basically Ms. Sinovic is driving down Highway S3 lanes by St. Louis, and she's in the middle lane. Her testimony was that a car from her right started coming over. Her right would be the passenger side of the vehicle. The testifier, she felt her car skirt, and then after that, complete loss of control of the vehicle, and she slammed into the medium, concrete medium, and flipped down the road and suffered some injuries. Now, the circuit judge decided that, well, one of his comments in his decision was, excuse me, in his decision that there was no contact between the vehicles, he said, there's no such thing as contact without feeling it or seeing it, and that's what I want to talk about. Number one, without seeing it, she is the driver of the vehicle, and the impact would have been on the right front side of her vehicle. She would not have been able to see this car's contact with her vehicle from her vantage point. Did you say front? It's in the front. Front side of her vehicle. So she's looking over this way. She would have been, the car would have been in her front. She can't see that? I'm talking about the specific impact. You know, if you ask, did she see the specific impact, you can't say that she saw the two vehicles have the impact. And where was the impact on both vehicles? Vehicle? On her vehicle, I should say. Well, the question is whether there was an impact. She felt her front steering wheel jerk. When she says there's an impact, was there evidence of an impact on the vehicle? No. No evidence? There was none submitted. See, after this incident, she went literally flipping down the highway. Who? It was the car owner. From my perspective, as proven in the case, the car was messed up anyway, but there was no impact. The car was messed up anyway after it flipped? After it flipped, right. The car was pretty mangled after. The impact with the vehicle that was on her right was not the damage to the vehicle and not the incident that caused her injuries. What caused her injuries was losing control and then hitting the concrete and flipping down the road. But when we talk about the impact, she would never have been able to see on her right-hand side whether that car touched her or not. So then we go to the next question is, okay, how do we know there was an impact? Well, the judge says that he didn't think, he says there's no such thing as contact without feeling it or seeing it. This girl, I call her, she's 22, 23 years old, something like that. I was still a college student getting a Ph.D. or something in nuclear physics, something that was way beyond my level of intelligence. But she testified that what she felt was her steering wheel jerk. She says, when I saw that guy, the driver of the car coming into my lane, she said I would have held the steering wheel straight. I would not have jerked my steering wheel away. I would have not have driven into the other lane. She felt that jerk. She felt herself lose control of the vehicle. Now, when we're just switching lanes, you know, what are the chances that we're going to just lose control switching from a center lane to a left lane, even if we do it very quickly? Does she talk about the jerk in conjunction with the timing of this other car? Yes. That she saw coming up? Yes, yes. And that's the part that I think is significant. Now, counsel pointed out, the judge pointed out, too, that there were several times she said, I don't know. And what she was saying was, I don't know exactly what happened. I don't know about the impact. I just know my car jerked, and I wouldn't have jerked it over in that direction if I were just turning into the other lane. Now, with that said, there are some bad histories to the ‑‑ I shouldn't say there have been bad histories, but there are histories to the physicians when they say, was there impact with another vehicle or something to that effect that's in the briefs. And she checked out or she answered it one way and then scratched it out and did it another. And what she testified to was that she thought that was referring to her ‑‑ was it another ‑‑ was it an impact with the vehicle that caused her injuries? She's saying, no, the impact was with the wall. The impact was when I lost control and hit the concrete wall and went rolling down the highway. She was viewing that as being separate from the impact with the car to her right, because that did not cause her to have the injuries to her arm and neck and things. Didn't cause her windshield to bust. Didn't cause her to have to be excluded just right then, or, excuse me, extracted from the vehicle. That all happened with an impact with the wall. Did they stop soon after the St. Louis? Yes. And was ‑‑ are we applying Illinois law here? Yes. Why? Illinois policy. The plaintiff is from Illinois, Belleville. And the policy was written in Illinois. It's a bad policy. Unfortunately, in this situation, we had a ‑‑ excuse me, we had a witness that could not be located when it came time. We talked to her beforehand. And that's why I tried to get in the testimony as the excited utterance. And I understand what the law is on the excited utterance. But this circumstance, I think the issue is ‑‑ Did she see the accident? I mean, did the ‑‑ That's what she would have testified to, yes. But was that part of what she supposedly told the mother? Yes. Is that she actually witnessed the contact? Right. And I think that the issue on the excited utterance of the three factors would be the absence of time to fabricate a statement. You know, it has to be close in time to the event that occurred. In my suggestion, in this particular case, with this particular set of circumstances, my client testified that when they got her out of the car, somebody went and found her cell phone. And then immediately this lady that pulled over tried to call her mom. And she told my client right then what she saw. And she also told the mother. How much time, actually? I'm sorry? How much time actually transpired? Unfortunately, I did not ask that question. And I don't know that my client would have known exactly how much time transpired, quite frankly. With all the flipping around, how badly was she injured? She ended up with some glass in her arm that's still coming out. She has some scarring from the glass. She had some soft tissue injuries to the neck and spine, about $11,000 in medical bills. But she didn't go get some of her treatment because of being at Mizzou and doctors and all those things. I just think in this situation, when we're talking about an underinsured client and the proof of impact, I think that this young lady, taking into account her age and things, I think that she sufficiently proved by performance of the evidence. I know it's your manifest way of the evidence, but I think she sufficiently proved that there was impact. The fact that she technically did not see that impact leads us to have to look at the other circumstances. And I think weighing the two, the suggestion is something happened to cause that part of her. I have one other question. The briefs contradict one another in that one says that a bench trial was held on July 14th and the order says an evidentiary hearing was held, which in my mind is a big difference. What happened on July 14th? Well, on July 14th, first of all, counsel had filed a motion for summary judgment, alleging there was no issue of material fact. At that hearing, I suggested that, well, there needed to be an evidentiary hearing on their motion for summary judgment so that we would have the opportunity to try to have that witness testify and have my client just testify. There was some discussion, and counsel and I decided to, initially I thought that this would just be a decision for the three arbitrators. And the judge at one point mentioned that under the policy this might be an issue for them, but in reality I think the question of what constitutes or causes there to be coverage is for the judge to decide. So I believe this was an evidentiary hearing on their motion for summary judgment. And not a bench trial because the policy has an arbitration provision? I'm sorry? The policy has an arbitration provision? Yes. Okay. So they would have been the fact-finders? They would have been the fact-finders, correct. Okay. But I think first the court would have to decide whether there was coverage. Questions of law. Correct. Thank you. Mr. Hoskinson. I'm sorry? Mr. Flutz. Mr. Flutz. I have a question. If she had merely said, yes, I saw the car, made contact with my car, is that enough to come under the coverage of the uninsured? No, this was a question for the trial to find. The burden for the court, which filled the shoes of the jury in this case, was to determine based on the products of the evidence presented to it whether or not the court determined there was contact between the vehicles. If she had said, which didn't occur, that she saw if there was contact of her, there was contact, or had some other basis to believe that there was contact other than this testimony about a wheelchair, that would be part of that evidence submitted to the court to determine based on this preponderance of evidence standard. That standard, though, has been decided. Today we're here to determine whether or not the court's ruling was against the manifest weight of the evidence. In other words, whether it was unreasonable, not based on the evidence, or arbitrary. And when you go through, in fact, the court itself did a pretty good job at the end of the bench trial, and I'll address that issue in a minute, but did a pretty thorough job explaining its reasons why it made its determination. And I call this a bench trial because if you look at the record, this was not a continuation of a summary judgment motion. The summary judgment motion was heard and it was denied by order, and the order was dated June 3, 2014. The court at that point, and I think that the court is just using the terms evidentiary hearing and bench trial interchangeably. We actually filed a bench trial memorandum prior to the bench trial. The court heard opening arguments, heard witness testimony, and heard closing arguments. In all intents and purposes, this was a trial. What happened to the arbitration clause? The arbitration clause doesn't apply, and the court actually addressed this. First, I want to say I think this issue has been waived. It wasn't brought up on appeal until this morning. That being said, it was addressed at the hearing on the motion for summary judgment. And there's a Supreme Court case that's directly on point. It's State Farm v. PGM, and I'm probably butchering that. It's Y-A-P-E-J-I-A-N, and it's at 152 L-F-2-E-533. And the court in that case was determining whether or not an arbitration provision such as was in this policy for uninsured motorist coverage. It's also in the uninsured motorist statute itself. I mean, these certain issues regarding uninsured motorist coverage is supposed to be decided by arbitration. But what is not supposed to be determined by arbitration factually or legally is whether or not coverage exists in the first place. That issue has to be addressed by the court. The Supreme Court considered that rule on that and then said, now if the court determines there's coverage, then it goes to the arbitrators to determine, one, if the uninsured motorist or hit-and-run motorist was liable for the accident and then what the damages are. So those two issues are separate. And in the court's June 3, 2014 order denying our summary judgment motion, it actually mentions in that order that's part of the record that pursuant to that Supreme Court case, this coverage issue is for the court to determine and then set it for what it called an evidentiary hearing or bench trial. A bench trial is different than an evidentiary hearing. What we did was a bench trial. I think the record reflects that. Was the issue at the hearing coverage or was it everything? No, it was coverage. We had agreed to determine the coverage issues first. If coverage is found, then it would be submitted to arbitration. So then if you look at the record, the question today is whether or not the trial court's finding was based in part or has some basis, reasonable basis in the evidence that was presented to it. The only basis that the defendant in this case, Ms. Senevic, presented that there was contact was that she felt a jerk. At the time that she saw the dark green vehicle swerve toward her lane. That is actually different than what she told her treating the police officer responding to the scene and the treating chiropractor that she treated with three weeks after the accident. If you look at the record, she consistently said, other than that jerking of the wheel, she didn't know. She couldn't say for sure if there was contact. The court called this testimony vague and uncertain. He said, and then the court continued on, that if you look at the only positive evidence, the only evidence that can't be disputed at this point, indicates that there was no contact. That evidence is that one, Ms. Senevic told the responding police officer after the incident that she changed lanes to avoid colliding with the green vehicle, which caused her to lose control. That was immediately after the accident. Then three weeks later, on September 2nd, 2011, she treated with her chiropractor and filled out a personal injury questionnaire at the beginning of the treatment, which is common, I think, to most medical providers. In that, though, she provided in her own language, and she testified there were some issues to whether or not she filled out this form herself. And she testified in the bench trial that she filled this part of the form out herself. It's in her own handwriting. She didn't seek help. That she got some help for one of the last pages, but what I'm going to address does not involve that last page whatsoever. So these are her words. That she was cut off by a car, I jerked my wheel, my car skidded, and spun, then flipped. Then the questionnaire itself asked, did your vehicle strike the other vehicle? She checked no. The vehicle next asked, was your car struck by the other vehicle? And again, she checked no. And later on, the questionnaire asked, was your vehicle shoved? She crossed out, and it has the process for yes and no. She crossed out shoved and wrote in the word that she was being cut off. Taken together, this evidence indicates that at least at the time that she was filling out this questionnaire and immediately after the accident, she didn't believe she was hit by this vehicle. She didn't believe there was contact between these two vehicles. And at the very least, she admits very clearly to both the police officer and the chiropractor that she swerved to get out of the way, that she saw a car coming into her way, and she took evasive action. She denies that later on in her testimony to the court, that she says, for some reason, she wouldn't have done that. She said, I think that she didn't think that she was capable of doing that, so she doesn't think she would have done that. So I asked her about taking evasive action, and she admitted in her testimony that it would be natural human instinct if you had a lane open to your left, which she admitted she did, and that a car was swerving at you from the right to move your car over to the left to avoid contact. She admitted that there was only a split second in time between the time she saw the dark green vehicle swerve toward her and the time that the vehicle started to skid and flip and lose control. And she admitted that there was only enough time for her instincts to take over. There wasn't enough time for her to sit and calculate what the wisest choice of action was. And taken together, it's an admission that her instincts took over, and she admits that her instincts would have been to swerve into the left lane, as she told the police officer, and she told the chiropractor after the accident. The court made its decision based on the testimony of Ms. Senebek. Its decision that there was no contact, or at least that the proponents of the evidence did not establish that there was contact, is clearly based on the evidence. It's not arbitrary, and it's not against the material weight of the evidence. Further, the court's decision is based on Ms. Senebek's testimony that, at best, is contradictory. And the Supreme Court has held that where contradictory evidence is given in trial, contradictory testimony, rather, the trial court's finding, where the trial court sits in a bench trial and fills the roles of the jury and acts as the fact finder, that its findings, based on that contradictory evidence, should not be disturbed, except for abuse of discretion. The second issue that's brought up on appeal is the exclusion of the testimony of Ms. Senebek's mother about an alleged phone conversation that she had with a woman named Sabrina, who allegedly arrived to the scene after the accident. The court heard an offer of proof from Ms. Senebek while Ms. Senebek was testifying, Lindsay Senebek, rather, while she was testifying about Ms. Senebek's conversations with Sabrina at the accident scene. Lindsay Senebek testified that she didn't know where Sabrina was in traffic at the time, that she showed up afterwards, that she helped her find her phone after she was removed from the vehicle. The phone on this vehicle had flipped over a couple of times, and she took some help from Sabrina and some other passant motorists that helped her get into the vehicle. She said that after that she found Ms. Senebek's phone, gave it to her, attempted to find Ms. Senebek, was shaken up, and she couldn't. She said, can you look for my mom's phone number on my phone? So Sabrina took the phone, looked for the mom's number, and tried to call it. It didn't work. And so she said, okay, tell me the number, let me get my phone out, and then I'll call your mom and tell her what happened. And she did so, and then there was a conversation that Lindsay Senebek testified. She didn't know what was said. She didn't hear what was said by Sabrina, and she didn't know what was said by her mother other than what her mother had told her later. Lindsay Senebek admitted that at no time did Sabrina ever tell her she witnessed the accident, ever tell her that she witnessed contact between the two cars, ever tell her where she was at the time of the accident in traffic, if she was even possible that she could have witnessed this accident. And defendant's counsel then attempted to call Kathy Senebek to testify regarding this conversation. At that point, the trial court said, no, this is hearsay testimony. The defendants hadn't met their burden of proving that there was an excited utterance here. And in specific, the court explained that Lindsay Senebek's testimony established that Sabrina stopped her car, approached the scene, found Lindsay Senebek's phone in the crash debris, approached Senebek after Senebek had already been removed from the vehicle, attempted to use Senebek's phone to call Senebek's mother, which failed, and then called Senebek's mother from her own phone. The court determined that this is, while we didn't have a specific amount of time, because Ms. Senebek couldn't testify to it, this was just too much time that had passed to establish that she was still under an excited state and so that this should qualify as a hearsay exception. There is an additional reason why this testimony should not have been admitted, and the court got this question right. This court, the Fifth District ruling, Flathurst-Madison Mental Services, that where there is no corroborating evidence that the declarant, who's unavailable to testify, actually witnessed the incident that caused the excited state, or that allegedly caused the excited state, that the proponent of that evidence hasn't met their burden in establishing that an excited utterance occurred. In that case, the plaintiff was a gentleman who was loading a flatbed truck with steel coils, and he fell. The responding ambulance personnel testified in an offer of proof that he had spoken to another person at the scene of the accident who claimed that they were working with the gentleman loading the truck and that this person had seen the accident and seen what happened. The court in that case said, no, that doesn't qualify as an excited utterance and denied its admission as an exception to hearsay. In fact, this court on appeal determined that since the proponent of the evidence didn't submit any other evidence that this unidentified person was actually at the scene, that they existed, that they actually witnessed the gentleman fall, other than this hearsay testimony, in other words, there's no admissible evidence that corroborates that there was a person, a declarant, that actually saw this accident, that there's no factual basis for determining that the declarant actually did witness the occurrence and therefore does not qualify as a hearsay exception. That applies here. In this case, there's no evidence. Lindsey Sinovic was asked at length by both counsel for defendants and myself about her conversations and her observations of Sabrina after the accident. She doesn't provide any corroborating evidence that Sabrina actually witnessed the accident, that Sabrina, certainly that Sabrina witnessed any contact, but there's no testimony that she was following Ms. Sinovic in traffic. And these are all things that are set forth in defendants' appellate briefs before you, but there's no citation of the record because it doesn't exist in the record. There's no evidence that was submitted to the trial court, and there's no evidence in the record before you that those things were true, that she was in a position to even witness this accident. The court, looking at that evidence, correctly ruled, then, that the proposed testimony from the mother did not fit the excited utterance exception to hearsay. Therefore, it denied its admission. That was up to the sound discretion of the trial court, and it should not be reversed unless the court determines that there was a clear abuse of its discretion. Any questions? No. Thank you very much. I don't have any of your notes. Oh, okay. Very good. Thank you, gentlemen. This matter will be taken under advice and an order will be ordered in force. Have a good day.